McIlvaine, C. J.
The truth of the averment in the petition that the auditor of the county “ wrongfully and without warrant of law, and contrary to the constitution of the state,” placed the taxes sought to be enjoined upon the duplicate, was not admitted by the demurrer. Such averment must be regarded as a mere conclusion of law, which the pleader alleged should be drawn from the facts stated in the petition. A general demurrer admits the truth of facts as stated in a pleading; but the correctness of legal conclusions averred in the pleading is not thereby conceded. The law, therefore, as understood by the court, and not as it may have been understood by the pleader, is the test by which the sufficiency of the facts stated in the petition must be determined. ' And, in applying this test, it must be assumed that the auditor, in placing this tax upon the duplicate, pursued the statute in such case made and provided — the performance of his duties in this respect not being negatived by averment. The law presumes that public officers have faithful^ performed all the duties of their offices, until it is otherwise made to appear. This brings us to consider whether the act of April 6,1866 (S. & S. 762), was a sufficient warrant for the assessment of the tax complained of.
1. It is claimed by plaintiffs in error that the words “addition to any city,” as used in this statute, mean an addition from territory lying without the corporate limits of the city; and that the statute does not apply in cases where lands within the city limits are laid out and platted into lots, streets, etc. In this construction the court is unable to concur. That these words do not purport an addition to the territorial limits or boundary of the corporation, *154 is clear, from the fact that the territory of a city, as a municipality, can not be extended by laying out and platting into lots, etc., the lands adjacent to its boundary. The “addition” here meant, we think, is such kind as results from the mere act of the proprietor in laying out and platting his lands into lots, streets, etc., and is such as the law requires the plat thereof to be recorded. (
Large areas of farming lands, not subdivided into lots, streets, etc., are embraced within the corporate limits of most cities and villages in this state. The mode of laying out such lands into lots, streets, etc., and of platting the same is prescribed in section 6 of the act of March 3, 1831; and the mode of laying out towns “ or any subdivision or addition thereto,” on lands not embraced within the limits of cities or incorporated villages, is prescribed in the proceeding five sections of the same act (S. & C. 1482), and of the amendatory act of March' 22, 1849. (S. & C. 1489.) In each of the cases provided for, a map or plat of all the grounds so laid out is required to be recorded in the office of the recorder of the county in which the town or city is situated.
The terms of the act of 1866, now under consideration, are “that whenever any person or persons shall lay put any toion, or addition to any city or town in this state, before the plat thereof shall be recorded,” etc. That the legislatui’e did not mean, that the addition to any town should be such only as was made of territory without its corporate limits, is perfectly clear, for the reason that many towns in this state (within the meaning of the statute) are not incorporated at all. And if no reference was had to the corporate limits of towns, we feel assured that no reference was intended to be made to the corporate limits of cities, although the the word “ city,” in this state, imports a municipal corporation.
We are of opinion, therefore, that the plat of an addition, either to a city or town, intended by the statute, is an addition to the territory previously laid out into lots, streets, alleys, etc., the plat whereof has been recorded; and not *155 an addition to the territory embraced within the limits of the city or town as prescribed in its charter.
2. It is also claimed by the plaintiff that this statute, in its operation, violates the constitution of the state in relation to the uniformity of taxation.
Article 12, section 2, of the constitution provides that “laws shall be passed, taxing, by a uniform rule, all real and personal property, according to its true value in money.”
In pursuance of this provision statutes were passed, under which all the real property of the state was valued for taxation-in the year 1870. The valuation was made, in each county, by district assessors. The valuation by them made and returned was afterward equalized, through the action of county and city boards of equalization; by raising the valuation of such tracts and lots as, in the opinion of the board, were returned by the assessors below their true value in money; and by reducing the valuation of such tracts- and lots as were returned above their true value. íhis valuation, as between the counties, was afterward equalized through a state board of equalization, bj'- adding to the aggregate valuation of each county, which it believed to be-valued below its true value in money, such per centum as raised the same to its true value; and by deducting-'from the aggregate valuation of the county, where it was believed to be above its true value in money, such per centum as reduced the same to its true value. This is known as the-decennial valuation, as the like process is to be repeated in every tenth year thereafter.
By the valuation thus fixed, the property of the plaintiffs-was placed on the duplicate for taxation at $1,909.
After this property was laid out into 34 lots, the valuation, made by the township assessor and placed upon the duplicate by the county auditor, under the pi’ovisions of the act of 1866, was $7,080.
"Without alleging that the valuation of their lots, as made by the township assessor, in 1873, was in excess of their true-value in money, the plaintiffs claim that the rule of uni *156 formity in valuing property for taxation, required by the constitution, has been violated by the operation of this statute, to their injury, in this, that their lots are taxed upon a valuation of $7,080, whereas they should be taxed upon the valuation of 1870, to wit, on $1,909.
In discussing the operation of this statute, plaintiffs’ ■counsel say:
“ That if any person owning property in a town or city, more or less, shall plat the same, each lot or parcel as represented on such plat, shall be immediately reappraised by the assessor at its value at that time, and such valuation shall be entered on the duplicate for taxation, while all the ■other property in the town or city remains at the valuation of 1870.
If, as is generally the case, the value of property thus subdivided, has risen since 1870, the same causes which'have ■enhanced its value, have produced a corresponding effect on the adjoining and all other property in the town or city. An increase of inhabitants, the opening of mines, the increase of manufactures, public improvements, or other local or general causes, produce such results. Subdivisions made prior to 1870 are affected by the same causes and to the same extent. It follows, therefore, that this statute, necessarily and inevitably, produces inequality in valuations in towns and cities which are prosperous and increasing in wealth. It does not admit of equality. It leaves the mass of property as valued in 1870, and selects a small portion, which it requires to be valued years later, and when its value has been increased many fold.”
If such were the necessary results of this statute, operating in connection with other statutes, in fari materia, it would be difficult to sustain it, and at the same time, enforce the principle of taxation as declared in the constitution, to wit, equality of burdens upon all taxable property.
The constitution requires that the valuation for taxation ■of all pi-operty — real and personal — shall be according to its true value in money. There appears to be a necessity, from the very nature of personal property, in order that it *157 may be taxed according to its true value in money, that an annual valuation should be made; and so the legislature has provided. And if equality of burden between personal and real property must be preserved, it is necessary that the valuation of the latter should be adjusted annually also. If the decennial valuation of real property were the only method of securing its taxation according to its true value in money, great injustice would be done, on account of its fluctuations in value, not only as between owners of personal and real property, but also as between the proprietors of different tracts and lots of real property.
Hence, the legislature has wisely provided, as part of this system for taxing all property by a uniform rule, and according to its true value in money, for annual boards of equalization in counties and in cities of the first and second classes. Secs. 8 and 9 of the act of May 8, 1868 (S. &. S. 755).
These boards are empowered, and we may add, required, to hear complaints and equalize the valuation of all real and personal property, within their respective jurisdictions: by raising the valuation of any tract or lot of land, or any item of personal property, when the valuation is below its true value in money, and by reducing .it when above its true value — provided only that the aggregate valuation shall not be reduced below a certain standard.
This process of equalization is performed annually; and thus, uniformity in the valuation of all property, according to its true value in money, is fairly provided for, if not actually secured.
Under this state of legislation, the assumption that other real estate in the city of Columbus, which has not been subdivided into lots since the date of the decennial valuation in 1870, remains upon the duplicate for taxation at the valuation then fixed, is not authorized; nor can it be assumed, that the propeily of the plaintiff, as valued by the township assessor in 1873, is taxed on a valuation above its true value in money, or at a valuation greater than *158 other real property in the city of Columbus of the same value iu money.
The plaintiffs admit that the rule of uniformity in valuation would not have been violated, if the auditor, instead of pursuing the statute of 1866, had distributed among their lots the valuation of $1,909, the amount placed upon the land, in 1870, before its subdivision. Suppose that method of fixing the valuation of the lots had been adopted by the auditor. Then it would have been within the power, as it would have been the duty, of the city board of equalization, at its session in 1873, to have raised their valuation in the aggregate to $7,080, if, in fact, their true value in money, at that time, equaled that sum. By this method, the same result would have been accomplished; and we doubt, whether any complaint of constitutional infringement would have been made.
If inequality, however, does, in fact, exist — if the plaintiffs’ property is placed on the duplicate for taxation at a higher valuation than other city property of the same cash value, or higher than its true value in money, ample provision is made by statute for their relief. It is their right and privilege to complain to the annual city board of equalization for redress, and it is the duty of the board to grant them relief. Until, therefore, they exhaust the remedy thus provided by statute, a court of equity should not interfere, in their behalf, by enjoining the collection of the tax.
In conclusion, we think, this statute, when considered and construed in connection with other statutes, in pari materia, does not, in its operation, conflict with the constitution in relation to the rule of uniformity in taxation.

Judgment affirmed.

White and Gilmore, JJ., concurred.